


UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

UNITED STATES OF AMERICA, Plaintiff, )
)
v. ) No. 3:11CV653
)
C&F MORTGAGE CORPORATION, )
Defendant. )
_____ )

## CONSENT ORDER

### I. INTRODUCTION

This consent order (order) is submitted for the approval of and entry by the Court simultaneously with the filing of the United States' complaint in this action against C&F Mortgage Corporation (C&F). The order resolves the claims of the United States that C&F engaged in a pattern or practice of conduct in violation of the Fair Housing Act (FHA), 42 U.S.C. §§ 3601-3619, and the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691-1691f, by obtaining higher prices on certain home-mortgage loans to black and Hispanic borrowers than on loans to certain non-Hispanic white borrowers in 2007. C&F denies these allegations.

Under the provisions of the order, C&F agrees to implement policies and procedures designed to ensure that the prices charged for C&F's residential loan products, including the portion of the price that reflects the discretion of the loan officer or any other employee, are set in a nondiscriminatory manner consistent with the requirements of the FHA and the ECOA. In addition, C&F will compensate certain black and Hispanic borrowers.

There has been no factual finding or adjudication with respect to any matter alleged by the United States. The parties have entered into this order to avoid the risks and burdens of

litigation and to resolve voluntarily the claims in the United States' complaint relating to C&F's alleged violations of fair-lending laws.

## II. GOVERNMENT ALLEGATIONS

C&F is a wholly-owned subsidiary of Citizens and Farmers Bank, a state-chartered bank, non-member of the Federal Reserve System, supervised by the Federal Deposit Insurance Corporation (FDIC). C&F's principal place of business is Midlothian, Virginia.

C&F engages in retail mortgage lending from multiple locations in Virginia, Maryland, North Carolina, Pennsylvania, Delaware, and New Jersey.

During 2007, C&F permitted loan officer discretion in negotiating loan prices with borrowers, resulting in overages or underages. Baseline, or par, loan pricing – the price of the loan before any overage or underage – was communicated to employees through the daily distribution of "rate sheets." Employees were permitted to negotiate loan prices, which could result in an overage or underage. C&F did not require its loan officers to document the reasons for receiving overages or underages. The compensation of C&F loan officers was based in part on the amount of any overages or underages in the loans they originated.

In 2007, the FDIC began to examine the lending practices of C&F to evaluate compliance with, among other laws, the FHA and the ECOA. The FDIC found reason to believe that C&F charged a higher price to black and Hispanic borrowers when compared to non-Hispanic white borrowers for certain conventional, first-lien home-purchase loans in 2007, and that this disparity, in the agency's view, could not be explained fully by factors unrelated to race.

The FDIC referred this matter to the United States Department of Justice in August 2010 for appropriate enforcement pursuant to 15 U.S.C. § 1691e(g). The Department of Justice independently reviewed information obtained from C&F and from the FDIC. C&F has cooperated in good faith with the Department of Justice throughout its inquiry.

### III. **POSITION OF C&F**

C&F denies the claim that its lending practices resulted in a pattern or practice of discrimination against black and Hispanic borrowers and maintains that it complied with the letter and spirit of the fair lending laws. C&F acknowledges that loan officers had some discretion in negotiating loan pricing with borrowers, but asserts that any difference in overages or underages was attributable to legitimate, non-discriminatory factors. Notwithstanding its disagreement with the allegations of the United States, C&F has agreed to the entry of this order to resolve voluntarily the claims asserted by the United States in order to avoid the costs, risks, and burdens of litigation.

### IV. **REMEDIAL ORDER**

1. Unless otherwise stated herein, the remedial provisions of this order shall be implemented no later than 60 days after the effective date of this order and shall continue throughout its term. The effective date of this order shall be the date on which it is approved and entered by the Court.

#### A. General Nondiscrimination Injunction

2. C&F, including all of its officers, employees, agents, assignees, and successors in interest, and all those in active concert or participation with any of them, is hereby enjoined from engaging in any practice that discriminates on the basis of race in any aspect of a residential real estate-related transaction in violation of the Fair Housing Act, 42 U.S.C. §§ 3604 and 3605, or in any aspect of a credit transaction in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691(a)(1). This prohibition includes, but is not limited to, the adoption, performance, or implementation of any policy, practice, or act that results in race discrimination in overages or

underages, including the portion of the loan price that reflects the discretion of the loan officer or any other employee, to those who borrow money secured by residential real estate.

### B. Lending Policies and Procedures

3. At all times during this agreement, C&F shall comply with the provisions set forth in 12 C.F.R. § 226.36(d), which prohibits loan originators from receiving compensation that is based on the terms or conditions of loans secured by real estate.

4. C&F has developed and shall implement specific, nonracial standards for the assessment of all origination fees and costs it charges and retains for itself or pays to its employees on loans secured by residential real estate, and shall document the justifications for any overages or underages greater than 0.25%.

5. C&F shall require all employees who originate loans secured by residential real estate to comply with the standards described in paragraphs three and four. C&F shall also require an appropriate manager, under the supervision of a designated senior official, to review compliance with these requirements to ensure that overages and underages do not vary materially by race or ethnicity. Any loan that is not in compliance with these requirements may not be funded. In the event that a loan inadvertently is funded in violation of the policy, an appropriate refund will be provided to the borrower. All reviews shall be documented and retained by C&F's Compliance Department. The results of these reviews shall be summarized in the reports to the United States described in paragraph 17.

## C. Monitoring Program

6. C&F has developed and shall implement a monitoring program designed to ensure compliance with this order. The program has been designed to monitor, using statistical, analytical and other techniques, on at least a quarterly basis, and at local and national levels, loans secured by residential real estate originated by employees for potential racial disparities in fees, overages, and underages for residential loan products. The program provides for review by executive management and corrective action if necessary. Summaries of these reviews and any corrective actions taken shall be included in the reports to the United States described in paragraph 17.

## D. Borrower Notices

7. C&F shall post and prominently display in the lobby of each location where loan applications are received a notice of nondiscrimination (a sample of which is attached as Appendix A).

8. C&F shall require employees who originate loans secured by residential real estate to provide to applicants (a) the full amount of the origination fees and costs charged and a statement that fees and costs may be negotiable between the originator and the borrower, and (b) a notice of non-discrimination that provides substantially the same information as is contained in Appendix A. Such disclosures shall be in writing, signed by the originator and the borrower (if the borrower executes), and submitted by the originator to be made part of the loan file. These disclosures shall be made as early as practicable but not later than 48 hours prior to the closing of the loan.

### E. Equal Credit Opportunity Training Program

9. C&F shall provide, no later than 90 days after the effective date of this order, training to management officials, loan officers, and any other employees or agents who participate in the origination of loans secured by residential real estate. During this training C&F shall provide each participant access to a copy of this order and the loan policies adopted pursuant to it. The training shall focus on equal credit opportunity issues, including the terms of this order, the loan policies adopted pursuant to it, the requirements of the FHA and the ECOA, and his or her responsibilities under each. During the term of this order, C&F shall provide annual training to covered employees with respect to their responsibilities and obligations under the FHA, the ECOA, and this order.

10. C&F shall secure from each employee or agent specified in the preceding paragraph a signed statement acknowledging that such employee has received access to a copy of this order and the loan policies and has completed the initial training required under paragraph nine. The signature may be either manual or electronic. These statements shall be substantially in the form of Appendix B (Acknowledgment) and Appendix C (Equal Credit Opportunity Training). During the term of the order each new employee or agent whose responsibilities include those set forth in paragraph nine shall be provided access to a copy of this order and given an opportunity to have any questions answered and shall sign the acknowledgment form statement (Appendix B) no later than 30 days after beginning his or her employment in that position.

### F. Satisfaction of United States' Claims for Monetary Relief

11. C&F shall deposit in an interest-bearing escrow account the sum of $140,000 ("settlement fund") for the purpose of compensating aggrieved persons. C&F shall provide

written verification of the deposit to the United States no later than ten days after the effective date of this order. Any interest that accrues shall become part of the settlement fund and be utilized as set forth herein.

12. The parties have agreed on a compensation list identifying 191 black or Hispanic mortgagors as aggrieved persons and designating their compensation amounts. Payments from the settlement fund to aggrieved persons shall be subject to the following conditions, provided that the details for administration of the settlement fund can be modified by agreement of the parties and without further Court approval:

(a) No aggrieved person shall be paid any amount from the settlement fund until he or she has executed and delivered to C&F a written release, as set forth in Appendix D, of all claims, legal or equitable, that he or she might have against the released persons and entities regarding the claims asserted by the United States in this lawsuit, so long as such claims accrued prior to the entry of this order; and

(b) The total amount paid by C&F collectively to the aggrieved persons shall not exceed the amount of the settlement fund, including accrued interest.

13. C&F shall, no later than 60 days after the effective date of this order, notify each identified person eligible for compensation by a letter (using its best efforts to locate each person). The form of this letter has been agreed to by the parties. Any letters that are returned with a forwarding address shall promptly be re-sent to that new address. C&F shall issue checks in the amount indicated on the compensation list to all identified persons who execute and return the releases. C&F shall issue and mail such checks no later than 21 days after the receipt of the release. C&F shall, every 90 days after the date of the first eligible-person notifications and until C&F submits its first annual report in compliance with paragraph 17, provide an accounting of

the compensation procedure, identifying: (1) the name and address to which each notice was dispatched, (2) those notices returned as undeliverable, (3) the releases received, and (4) the checks issued, mailed, and cashed. The United States may also contact aggrieved persons in connection with the compensation procedure and may use its own efforts to locate aggrieved persons entitled to compensation.

### G. Consumer Education

14. Any moneys not distributed from the settlement fund, including accrued interest, within one year of the date the initial notifications are sent to persons deemed to be aggrieved by the United States, shall be distributed to qualified organization(s) to provide credit counseling, financial literacy, and other related educational programs targeted at black and Hispanic borrowers. C&F will consult with and obtain the non-objection of the United States in selecting recipient(s) of these funds, and the parties shall obtain the Court's approval prior to distribution of the fund. C&F shall require each recipient of such funds to provide to the parties a report detailing how the funds were used for the purposes described in this paragraph. To the maximum extent practicable, these funds shall be directed to organizations that work with borrowers living in the metropolitan areas where C&F originated its highest volume of loans to black and Hispanic borrowers in 2007.

### H. Complaint Resolution Program

15. C&F shall maintain a complaint-resolution program to address consumer complaints alleging discrimination regarding loans secured by residential real estate originated by C&F. Documentation regarding such complaint resolution program, including documentation of individual complaints and resolutions, if any, shall be included in the annual reports referenced in paragraph 17. A person shall not be deemed ineligible for the complaint resolution program on

the basis of having executed the release described in paragraph 12(a), but there is no requirement under this order that any complaint necessarily be resolved for or against C&F.

## I. Evaluating and Monitoring Compliance

16. The content of the standards, procedures, and programs developed by C&F and required by paragraphs 3-10 and 15 have been reviewed by the United States. Any material amendments or modifications to these standards, procedures, and programs that C&F wishes to adopt during the term of this order shall be provided to the United States in advance of their implementation. The United States shall have 30 days from receipt of any such amendments or modifications to raise any objections to them and, if it raises any, the parties shall confer to resolve their differences. Upon successful resolution of any objections raised, or upon receipt of notice from the United States that it has no objections, the defendants shall immediately implement the amendments or modifications to the policies. In the event that objections are raised and the parties are unable to resolve them, any party may bring the dispute to this Court for resolution.

17. For the duration of this order, C&F shall retain all records relating to its obligations hereunder as well as its compliance activities as set forth herein. The United States shall have the right to review and copy such records upon request, including loan files and electronic data for loans secured by residential real estate made during the period of this order. C&F shall for the duration of this order provide to the United States the lending data it submits to the Federal Financial Institutions Examination Council (FFIEC) pursuant to the Home Mortgage Disclosure Act, no later than 30 days after its submission each year. This data, including the record layout, will be provided in the same format in which it is presented to the FFIEC. In addition to the submission of any other plans or reports specified in this order, C&F shall submit annual reports

to the United States on its progress in completing the requirements of this order. Each such report shall provide a complete account of C&F's actions to comply with each requirement of this order during the previous twelve months, an objective assessment of the extent to which each quantifiable obligation was met, an explanation of why any particular component fell short of meeting its goal for the previous twelve months, and any recommendations for additional actions to achieve the goals of this order. C&F shall submit the first report no later than 365 days after the effective date of this order and shall submit a second report 365 days thereafter.

## V. <u>ADMINISTRATION</u>

18. The order shall terminate three months after the submission of C&F's second annual report due under paragraph 17. Notwithstanding the above, this order may be extended further upon motion of the United States to the Court, for good cause shown.

19. Any time limits for performance fixed by this order may be extended by mutual written agreement of the parties. Except as provided in paragraph 12, other modifications to this order may be made only upon approval of the Court, upon motion by either party. The parties recognize that there may be changes in relevant and material factual circumstances during the term of this order which may impact the accomplishment of its goals. The parties agree to work cooperatively to discuss and attempt to agree upon any proposed modifications to this order resulting therefrom.

20. This order shall be binding on C&F, including all of its officers, employees, agents, representatives, assignees, and successors in interest, and all those in active concert or participation with any of them. This order shall consider employees of joint ventures operated by C&F, and the loans they originate, to be employees of C&F and to be loans originated by

employees of C&F. This order also shall consider loans to be originated by employees of C&F even when origination functions are completed by contractors. In the event C&F seeks to transfer or assign all or part of its operations, and the successor or assign intends on carrying on the same or similar use, as a condition of sale, C&F shall obtain the written accession of the successor or assign to any obligations remaining under this order for its remaining term.

21. Nothing in this order shall excuse C&F's compliance with any currently or subsequently effective provision of law or order of a regulator with authority over C&F that imposes additional obligations on it.

22. In the event that any disputes arise about the interpretation of or compliance with the terms of this order, the parties shall endeavor in good faith to resolve any such dispute between themselves before bringing it to this Court for resolution. If a party reasonably believes that the other party has violated any provision of this order, it will provide the other party written notice thereof and allow 30 days to resolve the alleged violation before presenting the matter to this Court. In the event of either a failure by C&F to perform in a timely manner any act required by this order, or an act by C&F in violation of any provision hereof, the United States may move this Court to impose any remedy authorized by law or equity, including attorneys' fees and costs.

23. C&F's compliance with the terms of this Order shall fully and finally resolve all claims of the United States relating to the alleged violations by C&F of the fair lending laws, as alleged in the complaint, including all claims for equitable relief and monetary damages and penalties. Each party to this order shall bear its own costs and attorneys' fees associated with this litigation.

24. The Court shall retain jurisdiction for the duration of this order to enforce the terms of the order, after which time the case shall be dismissed with prejudice.

SO ORDERED, this 3rd day of October, 2011.

/s/ REP
_____
UNITED STATES DISTRICT JUDGE

The undersigned hereby consent to the entry of this order:

**For Defendant C&F Mortgage Corporation**

_____
ANAND S. RAMAN
JOSEPH L. BARLOON
AUSTIN K. BROWN
Skadden, Arps, Slate, Meagher, & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005
Email: Anand.Raman@skadden.com
Phone: 202-371-7019
Fax: 202-661-9023

**For Plaintiff United States**

STEVEN H. ROSENBAUM
Chief
DONNA M. MURPHY
Deputy Chief

_____
HOWARD R. GRIFFIN
Attorney for the United States
DC Bar Number 358322
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., N.W. – NWB
Washington, D.C. 20530
Email: Howard.R.Griffin@usdoj.gov
Phone: 202-514-4741
Fax: 202-514-1116

_____
ROBERT P. MCINTOSH
Virginia Bar Number 66113
Attorney for the United States
United States Attorney's Office
600 East Main Street, Suite 1800
Richmond, Virginia 23219
Telephone: (804) 819-5400
Facsimile: (804) 819-7417
Email: Robert.McIntosh@usdoj.gov

# APPENDIX A

We do Business in Accordance with
Federal Fair Lending Laws

UNDER THE EQUAL CREDIT OPPORTUNITY ACT, IT IS ILLEGAL TO DISCRIMINATE IN ANY CREDIT TRANSACTION:

On the basis of race, color, national origin, religion, sex, marital status, or age;

Because income is from public assistance; or

Because a right has been exercised under the Federal Consumer Credit Protection Laws.

IF YOU BELIEVE YOU HAVE BEEN DISCRIMINATED AGAINST, YOU SHOULD SEND A COMPLAINT TO:

U.S. Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
Washington, DC 20530
Tel: 1-800-896-7743
Website: http://www.usdoj.gov/crt/housing

AND:

C&F MORTGAGE CORPORATION
Attn: Compliance Department
1400 Alverser Drive
Midlothian, VA 23112
Tel: 1-888-339-8300, ext. 372

_____  _____  _____
Signature of Loan Officer   Signature of Borrower   Signature of Co-Borrower

## **APPENDIX B**

Employee Acknowledgment

I acknowledge that on _____, I was provided access to copies of the consent order entered by the Court in <u>United States v. C&F Mortgage Corporation</u>, (E.D. Va.), and the loan policies developed pursuant thereto. I have read and understand these documents and have had my questions about these documents answered. I understand my legal responsibilities and shall comply with those responsibilities.

_____
Signature

_____
Print Name

_____
Job Title

_____
Date

## **APPENDIX C**

Employee Training Certification

I certify that on _____, I received training with respect to the consent order entered by the Court in United States v. C&F Mortgage Corporation, (E.D. Va.), and the federal fair lending laws. I have had the opportunity to have my questions about them answered. I understand my legal responsibilities not to discriminate under the federal fair lending laws, including the Equal Credit Opportunity Act and the Fair Housing Act, and shall comply with those responsibilities.

_____
Signature

_____
Print Name

_____
Job Title

_____
Date

## **APPENDIX D**

Release

In consideration of and contingent upon the payment of the sum of [          ] dollars ($          ) pursuant to the consent order entered in United States v. C&F Mortgage Corporation, (E.D. Va.), I hereby release and forever discharge C&F Mortgage Corporation and Citizens and Farmers Bank, West Point, Virginia, and all of their past or present officers, employees, agents, partners, parents, subsidiaries, representatives, assignees, and successors in interest, from any and all liability for any claims, rights, remedies, recoveries or obligations, legal or equitable, I may have against them arising from the facts at issue in the litigation referenced above.

I acknowledge and agree that this release shall be binding on my heirs, representatives, executors, successors, administrators, and assigns. I further acknowledge and agree that this release is intended to extinguish all claims of every type arising from the facts at issue in the litigation referenced above, including those known and unknown and those suspected and unsuspected, without regard to whether they are now known or suspected, even if those claims may materially affect my decision to enter into this release.

I acknowledge that I am aware that I may hereafter discover facts in addition to, or different from, those facts which I now know or believe to be true with respect to the subject matter of this release, but that I release fully, finally and forever all claims, notwithstanding the discovery or existence of any such additional or different facts.

I declare under penalty of perjury that I am the person named below and am authorized to execute this release. I hereby further acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.

Executed this ___ day of _____, ____.

_____  _____
Signature*                    Signature*

_____  _____
Print Name                    Print Name

_____  _____
Address                       Address

**\* All borrowers and co-borrowers must sign this Release.**